## REYNOLDS v. RAYBORN.

### No. 4898.

Court of Civil Appeals of Texas. Amarillo.
April 25, 1938.

L. H. Brittain and C. W. Goerte, both of Fort Worth, for plaintiff in error.

Mays & Mays, of Fort Worth, for defendant in error.

JACKSON, Chief Justice.

On February 9, 1937, Jewel Rayborn made application to and obtained from the district judge of the 67th district court of Tarrant county a writ of habeas corpus directing R. A. Reynolds and Cecil L. Wood to bring before the court Alathia Reynolds, a girl twelve years old.

Applicant alleges that she is the mother of the girl, who she says is in the custody of either Mr. Reynolds or Mr. Wood, and that they restrain the child and improperly withhold her from the custody of her mother.

Petitioner says she is a fit and suitable person to have custody of her daughter, and her care and control will contribute much to the welfare of the girl.

Mr. Wood did not answer, but Mr. Reynolds obeyed the writ, produced the child in court, and answered that he was her father, and pleaded in detail the facts on which he relied to justify his continued custody, care, and control of his daughter.

On February 19, 1937, a trial was begun before the court on the writ, and after hearing the testimony, the court found that Alathia Reynolds was a neglected and dependent child; that she should not continue in the custody of either her mother or father, but for her best interest she should be placed in a proper institution; that each of her parents were amply able to support her, and decreed that such minor be placed in the Lena Pope Home in Fort Worth for training and education, and the parents each be denied custody of the daughter; that the father pay to such institution $12 per month and that the mother pay thereto $3 per month for the maintenance and support of said child.

The court also finds that:

"The former surroundings, atmosphere and environment of said minor child has been such that the court deems it to the best interest of said child that she be placed in such institution for training and

education, and that she not be molested in any way from any source outside of the said institution.

"It appearing that this child * * * has certain definite fixed religious ideas, it is the opinion of the court that it would be to the best interest of said child and it is so ordered that said minor child shall have and enjoy all of the training, teachings and privileges of said institution, but shall not be taught any particular denominational creed and shall in no event be required to perform any act contrary to her sincere religious belief, but that she shall be permitted to study, think and reason for herself relative to her religious belief, but shall have the usual and customary religious environment incident to such institution."

The decree permits either the father or the mother, provided he or she is unattended by any other person, to visit Alathia at any reasonable time, but neither shall take the child from the Lena Pope Home for any purpose. The superintendent or matron of the institution shall be the sole judge of what is a reasonable time for such visiting; no person, other than the father or mother, may visit the child at any time for any purpose without the special permission of the superintendent or the matron, and the institution is given absolute and exclusive care and control of said girl, subject to the orders of the court.

From this judgment, by writ of error, R. A. Reynolds, hereinafter called appellant, prosecutes this appeal.

Jewel Rayborn, the defendant in error, hereinafter called appellee, accepts the judgment of the court denying to her custody and care of Alathia, and this obviates the necessity of reciting the testimony in the record, which, we think, is entirely sufficient to warrant the court in adjudging, in effect, that appellee is an improper and unfit person to have the care and control of her daughter.

The appellant urges as erroneous the action of the court in denying him the custody of his minor daughter, because he contends the testimony shows without contradiction, but if not, by a great preponderance thereof, that he is sober, moral, and religious, and the court, having found that he was financially able to care for his girl, was not authorized to deny him such privilege and duty.

The child is by the decree effectually imprisoned. Certainly, at the sole discretion of the superintendent or matron, if alone, the father or mother may visit her, but few prisons do not extend this character and degree of leniency to the imprisoned, but like this decree, they do not permit the father and mother to take their child away from the prison. She could not leave the institution to visit any place of amusement, nor *to attend public school,* Sunday school, or church. Such severe limitations on the liberty of a child whose only crime is misfortune can be justified only by clear and convincing proof.

The testimony shows that the appellant obtained a divorce from appellee on April 28, 1934; that they had two children, Alathia and her brother, Dean, the custody of whom was not adjudicated in the divorce suit, but by oral agreement, the care and control of the children were entrusted to the father, and the greater part of the time from the date of the divorce until the habeas corpus proceeding, he had custody of his daughter. One time the mother, by promising to return Alathia, got the permission of the father to carry the girl to Dallas on a visit, but later refused to let her return, and it was approximately a year before he regained custody of the girl, though he continued to contribute to her support. Since that time, he appears to have cared and provided for her—arranged and paid for her to live with Mr. Cecil L. Wood and his wife in their home, and attend the public school at the Riverside Grade School. The principal testified that Alathia attended said school from the commencement thereof in September, 1936, until some time in February, 1937, and during the first semester she was absent but three days without excuse, but was tardy without any reason on numerous occasions; that her grades were good, above the average, and in most of her studies she made the grade of A.

The appellant, about a year after he was divorced from appellee, married a second wife and provided for his daughter in their home for about eighteen months when they agreed to and did separate, but he continued to support his daughter, after said wife left his home.

The father and mother of appellee testified that appellant would not work and support his children, but that he was a good boy. The evidence, however, is without dispute, that he had never been on relief. There is no proof that he ever committed any infraction of the law, had ever been

guilty of any disreputable conduct, or had ever ill treated his daughter. The testimony does reveal that he was sober, had worked for the Sinclair Oil Company for some time at $100 per month, had arranged for his daughter to live in what he ·testified, without contradiction, was a reputable Christian. home, and attend the public school.

Alathia Reynolds, whose custody is involved in this controversy, testified in chambers, among other things, that she attended public school, and, together with Mr. and Mrs. Wood and her father, went to Sunday school and church at and with the religious sect designating themselves and known as Jehovah's Witnesses; that neither she nor they saluted the United States flag, but she could not say exactly what her attitude toward the American government is, but she believed the flag to be all right; that she did not salute it exactly in the way other children did because she did not look to it for salvation; she looked to the courts and the government to represent the nation, but she looked to Jehovah above all things.

Does this record support a finding that the girl is a dependent child and warrant a decree that the father is unfit to have the care and control of his daughter?

Article 2330, R.C.S., reads as follows: "The term 'dependent child' or 'neglected child' includes any child under sixteen years of age who is dependent upon the public for support or who is destitute, homeless or abandoned; or who has not proper parental care or guardianship, or who habitually begs or receives alms, or who is found living in any house of ill fame or with any vicious or disreputable person, or whose home, by reason of neglect, cruelty or depravity on the party of its parents, guardian or other person in whose care it may be, is an unfit place for such child; or any such child whose parents or guardian permit it to use intoxicating liquor except for medicinal purposes or to become addicted to the use of such liquors, or permits it in or about any place where intoxicating liquors are sold."

According to the statutory definition, while this child was living with her mother and stepfather, she was a dependent child, but at the time this suit was instituted and tried, and for months prior thereto, the testimony, in our opinion, is entirely insufficient to support such finding.

Does the admitted refusal of the father and daughter to salute the flag of the United States because they think such act manifests a reverence that would violate the religious creed upon their fidelity to which, they believe, depends their future salvation, furnish convincing proof of the unfitness of appellant to have custody of his daughter?

History is replete with the bigotry, intolerance, and dogmatism of religious sects, and the pages thereof are strewn with martyrs who died for their faith. The divergence in creeds, the evils growing from a union of church and state, and the conflicts for supremacy waged between the two were studied and considered by the colonial pioneers who established the independence of these United States. They profited by peoples whose experiences in government had failed, as well as by the achievements of those whose governments had been more successful, and to avoid the griefs and disasters arising from the bigotry and religious intolerance of the preceding ages, they provided in our fundamental laws, Amendment 1 of the Constitution, of the United States, that the "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."

The authority of the United States to legislate respecting the establishment of religions was withheld in the Federal Constitution, and the state of Texas, in article 1, section 6, of her Constitution, says: "All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences. No man shall be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent. No human authority ought, *in any case whatever, to control or interfere with the rights of conscience in matters of religion, and no preference shall ever be given by law to any religious society or mode of worship*. [Italics ours] But it shall be the duty of the Legislature to pass such laws as may be necessary to protect equally every religious denomination in the peaceable enjoyment of its own mode of public worship."

The flag is emblematic of the justice, greatness, and power of the United States —these, together, guarantee the political liberty of the citizen, but the flag is no less symbolic of the justice, greatness, and power of our country when they guarantee to the citizen freedom of conscience in

religion—the right to worship his God according to the dictates of his conscience. Beyond my comprehension are the vagaries of people who claim and accept the protection of their government in order to worship God according to the dictates of their conscience, but refuse to salute their country's flag in recognization of such protection. Yet, however, reprehensible to us such conduct may be, their constitutional right must be held sacred; when this ceases, religious freedom ceases.

However much we may disagree with or disapprove their religious beliefs, the failure of appellant, because financially unable, to supply greater comfort and pleasure for his daughter, together with their refusal to salute the flag, do not constitute a sufficient cause to adjudge the father disqualified and unfitted to have the care, custody, and control of his minor daughter.

The judgment is reversed, and the cause remanded as to R. A. Reynolds, and affirmed as to Jewel Rayborn.