**GARRETT et al. v. ROSE.**

No. 5429.

Court of Civil Appeals of Texas. Amarillo.

April 20, 1942.

Willis & Via, of Pampa (Hayden C. Covington, of Brooklyn, N. Y., of counsel), for appellants.

No appearance for appellee.

JACKSON, Chief Justice.

The record shows that Mrs. Ruth Garrett and her husband, J. G. Garrett, with several other members of a religious organization known as Jehovah's Witnesses, on October 15, 1941 were in the town of Pampa in Gray County, Texas. The business of these people appears to have been to disseminate their religious doctrine by music, speeches reproduced on a phonograph and the distribution of their religious literature. They manifested the same enthusiasm and persistence in proselytizing others as was displayed by the Crusaders centuries ago. They are not so cruel or bloody but equally dogmatic and tenacious.

Mr. Cal Rose, the sheriff of Gray County, ordered these people to desist from occupying the streets for holding their meetings, reproducing speeches on the phonograph from records and distributing their religious literature, either gratis or for pay, instructed them to leave the County of Gray and the City of Pampa. They refused to obey the orders of the sheriff and asserted they were violating no law but were acting in a legal manner altogether within their constitutional rights.

The sheriff with his deputies, without warrant or legal authority or without charging any of them with any offense against the law, arrested the members of the organization in town, retained them in custody and placed one of their number in jail, who was crippled, and deprived him of his crutch; took from them their literature, phonograph and records and $2 in money. In the controversy he promised them that if they would discontinue their meetings, reproducing the speeches on the phonograph and the distribution of their religious literature he would release them from custody and prison, otherwise, they would be kept under arrest or in jail.

Mrs. Ruth Garrett and her husband, J. G. Garrett, with seven others of the members of the Jehovah's Witnesses organiza-

tion, in their own name and in the name of an alleged corporation called the Watchtower Bible and Tract Society, made application to the District Court of Gray County for a temporary writ of injunction to enjoin the sheriff and his deputies from interfering with their lawfully occupying the streets practicing their religious faith and disseminating their literature and reproducing speeches of their faith on the phonograph. They also asked for a mandatory writ requiring the sheriff to restore the property he had seized and withheld from them.

The sheriff answered but the only defense presented was contained in his general denial.

On October 23, 1941 a hearing was had on the application for the temporary injunction before the district judge and after the testimony was offered he made findings to the effect that Jehovah's Witnesses is a religious organization and had the right under the constitution of the United States and State of Texas under an unbroken line of decisions by the Supreme Court of the United States and other jurisdictions to distribute their literature and hold religious worship on the streets of Pampa. That the sheriff and his deputies had no right to interfere with such conduct and was without legal authority to arrest or disturb these people while they were conducting themselves in a lawful manner and were entitled to the writ sought. However, the sheriff had testified under oath that he now recognized the rights of the petitioners to distribute their literature without being molested by him or his deputies and in recognition of such right he would hereafter refrain from in any manner interfering with such rights. That in view of such promise on oath by the sheriff the temporary writ of injunction is denied.

 The court correctly concluded that the acts of the sheriff were arbitrary, illegal and unwarranted and that the writ prayed for in the petition should be granted since the petitioners were violating no law and were acting entirely within their constitutional rights. There are numerous decisions from various jurisdictions sustaining this legal conclusion of the trial judge but we shall content ourselves with citing Clara Schneider v. State of New Jersey, Kim Young v. People of State of California, Harold F. Snyder v. City of Milwaukee, Elmira Nichols and Pauline Thompson v. Commonwealth of Massa-

chusetts, all discussed and decided in one opinion by Justice Roberts of the Supreme Court of the United States, reported in 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155; Jesse Cantwell v. State of Connecticut, by the same eminent jurist, reported in 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352. This court passed on the principles here involved in the case of Reynolds v. Rayborn, 116 S.W.2d 836.

 The appellants' contention is that the petitioners, according to the court's decision, were entitled to have the writ issued for their protection and the court was without authority to accept the sheriff's promise to desist from annoying, arresting or interfering with the petitioners in the manner charged. This question seems to have been definitely settled in favor of the petitioners in Hawks v. Yancey, 265 S.W. 233, 236, in which Judge Looney of the Dallas Court of Civil Appeals said: "That the trial judge was convinced that the showing made by appellant authorized and made it his duty to issue the temporary writ is shown by the fact that the form of the order therefor was prepared by him and copies furnished attorneys for the respective parties. The verbal agreement between Hon. Alex Pope, attorney for appellee, and the court, to the effect that Dr. Yancey would not in the future do, either directly or indirectly, the things or be guilty of the conduct towards appellant, particularized in said order, was not a proper basis for judgment. We do not call in question the perfect good faith of Mr. Pope in the representations made to the trial judge, but the right of appellant to the liberty, privileges, and immunities of citizenship involved should not be made to rest on such an unsubstantial basis. If she made a showing justifying the relief sought as found by the court—and in this we believe he was correct—she was entitled to the writ based on the decree of court, which, if violated, could be enforced by appropriate contempt proceedings. The agreement between counsel for appellee and the court afforded no legal protection to appellant; it could have been violated by appellee, with impunity, and there is no method of enforcing it."

Under the record and the law, in our opinion, the court erred in denying the petitioners the prohibitive injunctive relief they sought.

 We are of the opinion that the court also committed error in holding that he had

no jurisdiction of the mandatory writ of injunction prayed for by the petitioners. The value of the property and money of which the petitioners claimed they had been dispossessed by the sheriff was alleged to be $35.50 and an original suit for the title and possession thereof could only be maintained in justice court and no other court save the district court had jurisdiction to grant the relief sought.

In Whittle Music Co. v. Lammons, Tex.Civ.App., 93 S.W.2d 233, Justice Looney also announced the following proposition which is apparently the settled law in this State: "A county court is without jurisdiction to issue the writ of injunction, except in instances where the amount in controversy exceeds $200 and does not exceed $1,000 in value; in other instances, where the applicant shows himself entitled to the relief, either under statutory provisions or principles of equity, the district court alone has jurisdiction to hear and determine the matter."

The judgment of the trial court denying the equitable relief is reversed and remanded and the court directed to have a temporary writ of injunction issued granting the relief sought by the petitioners in the prohibitive injunction until a final hearing on the merits of the case, and he is also directed to take jurisdiction of the mandatory feature of the injunction and if on final hearing the injunction is made permanent to direct the sheriff to restore all the property of which the petitioners were dispossessed by him.