**PENN et al. v. ABELL et ux.**

No. 4300.

Court of Civil Appeals of Texas. El Paso.

April 1, 1943.

Rehearing Denied June 3, 1943.

484

Burges, Burges, Scott, Rasberry & Hulse of El Paso, and Gerald Fitz-Gerald and Whitaker, Perkins, Turpin & Smith, all of Midland, for appellants.

Stubbeman, McRae & Sealy, of Midland, for appellees.

McGILL, Special Commissioner.

This suit involves the custody of two minor children, Lynn Thomas Abell, a boy twelve years of age, and Duane Lancaster Abell, a boy who had attained his tenth birthday at the time of the trial. The difference in the ages of the boys is approximately two years and nine months. Appellee George T. Abell and appellant Addilee L. Penn were formerly husband and wife. They adopted Lynn when he was nine months of age, and Duane when he was approximately nine weeks. The boys are not related by blood to each other or to any of the parties to this litigation. George T. Abell and his former wife, now Addilee L. Penn, were divorced by decree of the trial court on March 20, 1937 in cause No. 2942. That judgment incorporated an agreement of the parties with reference to the custody of the children entered into by them March 15, 1937. It awarded their custody to the father for approximately six months of each year, including the first half of the school year and the first half of the summer vacation, and during alternate Christmas Holidays, and to the mother during the oth-

er half of the time. This arrangement continued to the time of the trial, and under supersedeas bond is still in effect.

Mrs. Penn married appellant William Y. Penn in January 1939, and Mr. Abell married appellee Gladys Abell in May of the same year. On February 14, 1942, Mrs. N. A. Lancaster, the mother of Mrs. Penn, and Mrs. Penn, joined by her husband, filed a suit denominated "Civil Action No. 3561," in the trial court against Mr. Abell and others, in which George T. Abell was charged with having defrauded the plaintiffs in that suit out of certain property. In his second amended answer to that suit George T. Abell set out the existing arrangement for the custody of the children, alleged it to be unsatisfactory, and prayed that the court go into the matter of custody and enter such judgment as should be fair and equitable and for the best interests of the children. This portion of the controversy was segregated and is here involved. All parties conceded that the arrangement for divided custody of the children has not proved satisfactory since the remarriage of their adoptive parents, and that their best interests require some other arrangement. The cause was tried by the court without a jury, and the judgment rendered awards the entire and permanent custody of Duane Lancaster Abell to appellees, and such custody of Lynn Thomas Abell to appellants.

Appellants have presented eight points in their original brief and three points in their reply brief on which they predicate their appeal. It is first earnestly insisted and ably argued that the judgment is without support in the evidence, since the court's action in permanently destroying the relationship of brotherhood existing between these boys is without justification in the evidence, contrary to the concepts of law, which seek to retain for children of divorced parents as nearly a normal life as possible, ignores the paramount issue in the case, i.e., the welfare of the children, and amounts to an abuse of the trial court's discretion.

At the request of appellants the court filed elaborate findings of fact, and concluded that the best interests and welfare of the child Duane Lancaster Abell requires that appellees have his permanent care, custody and control, and that the best interests and welfare of the child Lynn Thomas Abell requires that appellants have his permanent care, custody and control. Proper exception was taken to such find-

ings and conclusions, and in response to request of appellants the court made additional findings of fact and adhered to his former conclusions. We shall here reproduce only those portions of the findings which we deem necessary to a proper discussion and disposition of the issues involved.

Following are certain of the original findings:

"10. Plaintiffs George T. Abell and wife, Gladys Abell, have a good reputation, have a good home life, are home-loving and furnish a home environment that is good for the wholesome development of said two minor children. Plaintiffs are stable, steady, thrifty, of good moral character and respectful of the teachings of the Christian religion and have continuously tried to instill like traits in said minor children. Plaintiffs deeply love said two minor children and have sincerely worked for the best interest and proper development of said children. Plaintiff Gladys Abell has been a mother to said children, especially during the time that plaintiffs have had the care and custody of said children, and has personally devoted much of her time and attention to said children during the time plaintiffs have had their care and custody. During such times, plaintiff Gladys Abell has not had the care and custody of said children in charge of servants, maids or tutors, but has cared for them herself, except as to the few times when she was out of town or otherwise unable to care for them personally, at which time they were left in the care of competent employees. George T. Abell has likewise devoted much time and attention to said children and has worked with them to the end that they be reared properly and in an attempt to bring them to manhood as sound citizens with good reputations, high ideals and proper standards of true value and worth. Plaintiffs are well fixed financially and are in a position to supply for and give to said two children everything they need and should have, including a good education.

"11. Defendants Addilee L. Penn and husband, William Y. Penn, have a good reputation, and are of good moral character. During the time that defendants Addilee L. Penn and husband, William Y. Penn, have had the care and custody of said two children, they have delegated much of the care of said two children to tutors, maids, or other servants, although the said Addilee L. Penn and husband have personally supervised the care of said chil-

dren and have devoted much of their time thereto. Said defendants are well fixed financially and are in a position to supply for and give to said two children everything they need and should have. The said defendant Addilee L. Penn deeply loves said children. Defendant William Y. Penn was present at the trial, but did not testify in open court.

"12. Neither of said two children were put on the witness stand, but the Court had a private conference with each of said two children. The court also had a private conference with plaintiffs, and had a private conference with defendants.

"13. In my conference with said children, both of said children expressed admiration, respect and love for all parties plaintiffs and defendants in this suit.

"14. In my said conference with Duane Lancaster Abell he stated that he would be happier in the custody of plaintiffs George T. Abell and wife, Gladys Adell, and expressed the preference that he be placed in the permanent custody of plaintiffs George T. Abell and wife, Gladys Abell.

"15. In my said conference with Lynn Thomas Abell, he stated that he would be happier in the custody of defendants Addilee L. Penn and husband, William Y. Penn, and expressed the preference that he be placed in the permanent custody of defendants Addilee L. Penn and husband, William Y. Penn.

"16. Lynn Thomas Abell is of a nature and character much like defendant Addilee L. Penn.

"17. Duane Lancaster Abell is of a nature and character very much like plaintiffs George T. Abell and wife, Gladys Abell.

"18. Said two children are normal boys, are well developed physically and mentally, and are of sufficient intelligence to know and understand fully and completely the meaning, import and probable result of the respective preferences expressed by them in my said private conferences with them.

"19. Duane Lancaster Abell while in the care and custody of defendants failed to pass his grades for two different half year terms in the public schools. Duane Lancaster Abell never failed to pass his grade in the public schools while in the care and custody of plaintiffs."

The additional findings which we deem pertinent are as follows:

"2. While the children, Lynn Thomas Abell and Duane Lancaster Abell, were reared since infancy as brothers, yet the said George T. Abell and Addilee L. Penn (then Addilee L. Abell) explained to said children while they were of an early age that they were adopted children and were no blood relationship to each other. While a feeling of brotherly love and affection has grown up between said two children, yet they have pronounced differences as to likes and dislikes, are of different ages, have different friends, and in their private conferences with the Court expressed the desire not to live in the future in the same home, Lynn Thomas Abell having expressed the desire to live permanently with defendants, Addilee L. Penn and husband, William Y. Penn, and Duane Lancaster Abell having expressed the desire to live permanently with plaintiffs, George T. Abell and wife, Gladys Abell.

"4. All parties to this suit are fit and proper persons to have the care, custody and control of said children. The Court finds that plaintiffs, George T. Abell and wife, Gladys Abell, are more fit and proper persons than are defendants Addilee L. Penn and husband, William Y. Penn, to have the care, custody and control of Duane Lancaster Abell. The Court finds that defendants Addilee L. Penn and husband, William Y. Penn, are more fit and proper persons than are plaintiffs George T. Abell and wife, Gladys Abell, to have the care, custody and control of Lynn Thomas Abell. Although the defendant, William Y. Penn, was present at the trial and did not testify in open court, yet the evidence shows that since his marriage to defendant Addilee L. Penn, he has occupied well the position of husband and father both as to his own child and as to Lynn Thomas Abell and Duane Lancaster Abell.

"6. Defendants are stable and steady. Defendant Addilee L. Penn is respectful of the teachings of the Christian religion, is a member of the church and has continuously tried to instill like traits into said two minor children; but plaintiff George T. Abell since March 30, 1937, and he and his wife, Gladys Abell, since their marriage have had a more wholesome influence on and have set a better example for said two children as to such matters than have defendants. Defendant William Y. Penn did not in open court express his views or attitude toward the Christian religion.

"8. Neither side called said children, Lynn Thomas Abell and Duane Lancaster Abell, or either of them, to testify on the witness stand in open court. The Court desired to have private conferences with each of said two children and did have private conferences with each of said two children with the knowledge of all parties to this suit and their attorneys and without objection from any of the parties or their attorneys. * * *

"10. The Court finds that the fact that Duane Lancaster Abell while in the care and custody of defendants failed to pass his grades for two different half year terms in the public schools, whereas he never failed to pass his grades in the public school while in the care and custody of plaintiffs, is one of several circumstances in favor of giving his care and custody to plaintiffs George T. Abell and wife, Gladys Abell."

It will be observed that by their proposition appellants concede as correct, and rely on as applicable to this case, two well-established rules of law:

■ (1) That in all controversies involving custody of minor children, the paramount and controlling question and ultimate issue is the welfare and best interest of the children. Haymond v. Haymond, 74 Tex. 414, 12 S.W. 90; Swift v. Swift, Tex.Civ.App., 37 S.W. 2d 241, and cases there cited; 15 Tex. Jur. p. 661, sec. 159.

■ (2) That in the determination of this question, the trial court is vested with a sound discretion, and his judgment will not be disturbed on appeal unless an abuse thereof appears from a great preponderance of the evidence. Rider v. Rider, Tex. Civ.App., 143 S.W.2d 222; Lyle v. Lyle, Tex.Civ.App., 141 S.W.2d 960; Wilton v. Spencer, Tex.Cix.App., 140 S.W.2d 306; Epstein v. Epstein, Tex.Civ.App., 84 S.W. 2d 894; Peeks v. Peeks, Tex.Civ.App., 27 S.W.2d 827.

A preponderance of the evidence revealed by the record unquestionably discloses that these boys have for each other strong feelings of brotherly love and affection. If the judgment necessarily involved a finding that apart from all other considerations it was for their best interest and welfare that these bonds should be severed and permanently cast asunder, we should have no hesitancy in holding that an abuse of discretion is shown. But the ultimate issue of welfare and interest involved much more than the disruption of this relationship. The philosophical questions propounded to the various witnesses who testified that, in their opinion, the best interest of the boys required that their custody be not separated, did not contain all of the elements involved in the ultimate question before the court. In a sense, they were predicated on the knowledge of the witnesses of their observation of the boys, their feelings for each other, and their surroundings in the homes of appellants and appellees. But since the attention of the witnesses was not specifically directed to the many elements involved in a consideration of custody, their opinions must necessarily be regarded as more or less based on the abstract proposition of welfare and interest of the children in relation to disruption of their brotherly relationship alone by separate custody.

That the attributes of brotherly love and affection should be given serious consideration in the determination of welfare and best interest cannot be denied. We would not, for one moment, detract from the lustre of these virtues, nor minimize the importance and weight that should be given them in solving the very difficult question of custody. They are as ancient as the human family, and have been reflected in the history and literature of all races throughout the ages. Milton, in his "Paradise Lost," in extolling love as the greatest of all virtues, eloquently expresses the thought: "By Thee, founded in reason, loyal, just and pure, relations dear, and all the charities of father, son and brother, first were known."

■ In passing on the ultimate issue of welfare and interest, the court had many things to consider, as will appear from our discussion of other points. Among them were other family relationships that must necessarily suffer from the breaking up of this family—not only the relationship of brothers, but also that of father and son and mother and son. All of such relationships have been and must be sacrificed, though not necessarily permanently severed, by separate custody, in the interest of ultimate welfare and best interest of the child. Hunter v. Hunter, Tex.Civ.App., 187 S.W. 1049 writ dismissed; Norris v. Norris, Tex.Civ.App., 46 S.W. 405; Prendergast v. Prendergast, Tex.Civ.App., 122 S.W.2d 710, 711; Lyle v. Lyle, Tex.Civ. App., 141 S.W.2d 960.

488

■ It is next insisted that the evidence having established, and the court having found, that Mrs. Penn, the mother of the children, was a fit and proper person to have their care and custody, the court, in awarding the custody of Duane to appellees and refusing to award such custody to her, violated a well-established rule of law and abused his discretion.

In their argument counsel go further than this proposition, and invoke the rule enunciated in Martin v. Martin, Tex. Civ.App., 132 S.W.2d 426; Cain v. Cain, Tex.Civ.App., 134 S.W.2d 506; Swift v. Swift, Tex.Civ.App., 37 S.W.2d 241, and other cases. These cases do not hold that a mother who is a fit and proper person to have the custody of her children of tender years, is, as a matter of law, entitled to such custody. The rule goes no further than that she should be given the preference, other things being equal. This is based on the obvious fact that only a mother can give motherly care and attention which, other things being equal, a child or children of tender years are entitled to. Such is not the case here. This child will have the care and attention of an attentive and loving motherly woman. Regardless of this circumstance, we seriously question the application of the rule to a ten-year old adopted boy, unrelated by blood to either of his adoptive parents. Yet we are unwilling to authoritatively adjudicate that the best interest and welfare of this boy requires that such consideration should not be given more weight than the association, advice and counsel of a loving and experienced father. Such holding is unnecessary. By his fourth additional finding, the court specifically finds that appellees were more fit and proper persons than appellants to have the custody of Duane. This finding is not specifically attacked. From it the inescapable inference is that in so far as the custody of Duane is concerned, as between the mother, Mrs. Penn, and appellees, other things were not equal. Since the finding is not challenged for lack of support in the evidence, we shall not summarize the evidence which tends to support it. We think, however, that it does find support in the evidence, and this, without any reflection upon appellants. In view of this finding, the rule invoked has no application.

■ Error is asserted in that the court based his judgment upon private and extra-judicial investigations which formed no part of the record. At page 2 of appellants' brief it is said that "The court, with the consent of all parties, examined the children and plaintiffs and defendants privately out of court," and at page 39, that "The court interviewed the children with the consent of both parties." In his eighth additional finding the court states that neither of the children was called as a witness to testify in open court and that "The court desired to have private conferences with each of said two children, and did have private conferences with each of said two children, with the knowledge of all parties to this suit, and their attorneys, and without objection from any of the parties or their attorneys." In the absence of consent of the parties or over their objection, we express no opinion as to the propriety of such private interviews or conferences in custody proceedings. Nor is it necessary to determine whether, under such circumstances, any weight given to information so acquired constitutes reversible error. The opinion in Prendergast v. Prendergast, supra, indicates that even in the absence of consent, such procedure is proper, and in Williams v. Guynes, Tex.Civ. App., 97 S.W.2d 988, this court approved it, where it was followed with knowledge of the parties and without objection. This case went even further than the facts before us, since there the court had the chief juvenile officer of Dallas County make an ex parte investigation and report to him. We have no doubt that appellants, having consented to these ex parte interviews and conferences, cannot complain of weight given to relevant information acquired through them. The facts embraced in the findings based on these interviews and conferences were all relevant circumstances and entitled to some weight in the matter of custody, i.e.; (13) the boys' admiration, respect and love for appellants and appellees; (14), (15) and (18) their preference for custody in view of their physical and mental development, their intelligence and ability to understand fully the meaning, import and result of such preference. Dunn v. Jackson, Tex.Com.App., 231 S.W. 351, 353; and (16) and (17), the similarity of their natures and characters to their respective adoptive parents.

■ Appellants complain of the court's action in giving weight, as against Mrs. Penn, to his 10th additional finding in effect that Duane failed to pass his grades in school while in the custody of appellants

and never failed to pass while in the custody of appellees. The progress that a child has made in school is a proper element to consider in custody proceedings. Reynolds v. Rayborn, Tex.Civ.App., 116 S.W.2d 836. That appellants produced witnesses who gave plausible reasons for the failure— in no way connected with custody—would not, we think, entirely eliminate such failure from consideration by the court. Such evidence goes only ·to the weight that should be given to such failure.

The 16th and 17th findings are attacked as being wholly without support in the evidence. Some of the testimony of appellee George T. Abell tends to support these findings, but even disregarding this, we think they are amply supported by the opportunity the court necessarily had of observing the parties in the courtroom and talking with them and the children in the private interviews and conferences which under the circumstances were proper.

■ By his 14th and 15th additional findings the court found, in substance, that appellant Addilee L. Penn joined in a suit with her mother against appellee George T. Abell in Civil Action No. 3561, above referred to, in which he was charged with having defrauded Mrs. Penn and her mother out of their property, and that this action was pending at the time of the trial. Appellants complain of the action of the court in hearing evidence concerning allegations of the pleadings in that suit and in his giving weight to them. The second amended original answer of George T. Abell in the Civil Action No. 3561 was admitted for the limited purpose of showing how the question of custody arose. Without objection appellee George T. Abell testified that he felt very bitter about this property suit, and talked about it with the older boy, and told him if he were guilty of the charges he should "be in the pen." Mrs. Penn testified, in effect, that she attempted to explain the suit to the children so that they would not feel hard toward her or Mr. Abell. This testimony was also admitted without objection. The petition in Civil Action No. 3561 was admitted over objection. We think both it and the answer were admissible to show changed conditions of the parties since the divorce necessitating the change in the custody of the children. The evidence showed that this suit did cause a feeling of bitterness in Mr. Abell and was the immediate cause of the institution of this custody proceeding. We do not concur.in appellants' view that the court necessarily considered the pendency of Civil Action No. 3561 as in some manner reflecting on Mrs. Penn and tending to show that she should not .have custody of the children. His findings are perfectly. consistent with the view that the pleadings in and pendency of Civil Action No. 3561 were only considered with reference to the changed conditions necessitating a change of custody.

■ That portion of the 12th additional finding as to which appellants contend that the court erred in giving weight against Mrs. Penn finds that during the time she and her husband have had the custody of the children appellee George T. Abell has paid her seventy-five dollars per month for their support. By what stretch of the imagination this finding can be construed to in any way reflect on Mrs. Penn or mitigate against her, we are unable to perceive. It does throw some light on the disposition of George T. Abell to perform his legal and moral obligation to support his adopted children under somewhat trying circumstances, and in this way has some bearing on his fitness for their custody.

■ In their Reply Brief appellants specifically attack the court's 10th and 11th findings as being without support in the evidence. As we understand this contention, it is not that the facts embraced in these findings are without support in the evidence, but that the findings are erroneous because certain characteristics of appellees and their activities in behalf of the children mentioned in the 10th finding are ignored and omitted as to appellants in the 11th finding, though shown by the evidence. These, numbered as they appear in the brief, are:

(2) Appellees have a good home life;

(3) Appellees are homeloving;

(4) The home of appellees furnishes a wholesome environment for the development of minor children;

(5) Appellees are of stable character;

(6) Appellees are thrifty;

(8) Appellees are respectful of the Christian religion;

(9) Appellees deeply love the children —(absent as to appellant William Y. Penn);

490

(10) Appellees have worked for the best interest of the children;

(12) and (13) Appellee Gladys Abell has devoted much of her time to the children. and appellees have cared personally for them except a few times when they were out of town;

(14) Appellee George T. Abell has worked with the children to bring them up as good citizens with (a) good reputations, (b) high ideals, and (c) true standards of value and worth—(absent as to Mrs. Penn);

(15) George Abell is financially able to supply the needs of the children, including a good education.

Appellants made no request for findings as to them of the matters embraced in items (2), (3), (4), (9), (10), (14) and (15), and therefore the court's failure to make such findings is not reviewable on appeal. Rules 298 and 299, Rules of Civil Procedure. (5) was requested and supplied by Additional Finding No. 6. (6) was requested, but its omission is immaterial (as was also (15), not requested), in view of the findings embraced in Additional Finding No. 6 and the 11th finding, to effect that appellants were steady and stable and financially able to give the children everything they need and should have. (8) was requested and supplied by Additional Finding No. 6 as to appellee Addilee L. Penn. Since appellant William Y. Penn did not express his views on this subject, the court's failure to find thereon was justified. We also think such finding immaterial.

There was no request for findings as to appellant William Y. Penn in reference to the matters embraced in (12) and (13). But the substance thereof is inherent in the 4th additional finding that he has occupied well the position of father to these children.

We think that portion of the 11th finding to effect that during the times appellants had custody of the children they delegated much of their care to tutors, maids and other servants, although they personally supervised such care and devoted much of their time thereto finds ample support in the evidence.

Finally, appellants assert that the judgment is erroneous because it denies to Mrs. Penn the right of visitation of the child Duane. The judgment denies all relief not specifically granted. But since the right of visitation of this child was not sought by Mrs. Penn, the judgment does not deny her such right. Independent of the judgment, she has the right to see the child at all reasonable times and in a reasonable manner. Hayes v. Hayes, Tex.Civ. App., 123 S.W.2d 968, 969.

Our justification for the length of this opinion is the importance of the questions discussed and the earnestness with which the views of all parties have been presented. We have been greatly aided by the thorough research and able argument of counsel.

The responsibility arising by the gravity and seriousness of the situation seems to have been realized by the trial court and counsel for the respective parties. All that diligence and learning could do seems to have been done in behalf of these children. The trial court carefully considered and weighed the evidence and sought to apply the principles of law applicable thereto. The wisdom of man can go no further. It was inevitable that grief, sorrow and disappointment should result to worthy individuals.

We find no error, and the judgment is accordingly in all things affirmed.

This opinion directed to be written and is adopted by the Court.

WALTHALL, J., not participating.